1

2

**UNITED STATES DISTRICT COURT**

3

**EASTERN DISTRICT OF CALIFORNIA**

4

5

**JOHN DALTON and KATHERINE DALTON,**

6

**Plaintiffs**

7

v.

8

**HOME AWAY, INC.,**

9

**Defendant**

10

**CASE NO. 1:21-CV-1722 AWI HBK**

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

(Doc. No. 12 & 16)

11

12          This is a disability discrimination lawsuit that stems from the unsuccessful attempt of

13   Plaintiffs John Katherine Dalton to rent a chalet at a resort owned by Defendant Home Away, Inc.

14   ("HAI").  The operative complaint is the First Amended Complaint ("FAC"), which alleges

15   violation of the Americans with Disabilities Act (21 U.S.C. § 12101 et seq.) ("ADA") and various

16   violations of the California Civil Code, the California Health & Safety Code, and  the California

17   Government Code.  Currently before the Court is Defendants' combined Rule 12(b)(1) and Rule

18   12(b)(6) motion to dismiss and Plaintiffs' Rule 15(d) motion to amend.  For the reasons that

19   follow, both Defendants' motions and Plaintiffs' motion will be granted.

20

**FACTUAL BACKGROUND**[1]

21

22          From the Complaint, John Dalton ("John") is a physically disabled man who uses a

23   wheelchair due to disease related amputations of his left leg, right leg, and fingers on both hands.

24   Katherine Dalton ("Katherine") is John's wife.  Plaintiffs and their two children enjoy traveling

25   together, and Katherine is adversely affected if public accommodations such as hotels do not have

26   accessible rooms that meet John's needs.

27

28

---

[1] Defendants request that the Court take judicial notice of certain pages of the Pines Resort website.  Both parties have cited the Pines Resort website for various propositions, including the types of overnight accommodations available. In the absence of an opposition, the Court will grant Defendants' request for judicial notice.  See Fed. R. Evid. 201.

Defendants own and operate the Pines Resorts, a large resort comprised in part of a hotel and 84 two-story duplex Chalets located on Bass Lake.  The Pines Resort is known for its appearance in the 1988 movie *The Great Outdoors*.  None of the Chalets are accessible to disabled individuals who use wheelchairs, despite many of them being renovated over the years and despite all of them being constructed after 1970, the year California's access laws went into effect.

In May 2021, Katherine began searching for possible vacation destinations for her family and her sister's family.  Plaintiffs and their family love the movie *The Great Outdoors* and were excited to learn about the Pines Resort.  Katherine and her sister reviewed the Pines Resort website and thought that two Chalets (cabins that consist of a bedroom, a separate living room with a pull-out sofa, and the possibility of a fully equipped kitchen) would be perfect.  Preferably, Plaintiffs and their family would rent one Chalet and Katherine's sister's family would rent an adjoining chalet.  The Pines Resort website did not contain any information regarding accessible Chalets, so Katherine's sister called the resort.  During the call, Katherine's sister was informed that there were no accessible Chalets at the Pines Resort.

Although disappointed by this news, Katherine returned to the Pines Resort website to see if there might be an option that would work for her family.  The Pines Resort website had a tab entitled "Hotel Accessibility."  Katherine opened the tab and noticed that the website said that the hotel was accessible and that the resort was committed to meeting ADA standards.  The website indicated that an Accessible Lakefront Spa Suite was available, but the website description said the suite was more suitable for a couple rather than a family of four.  Using the website, Katherine e-mailed the Pines Resort twice about the possibility of a wheelchair accessible Chalet.  Katherine received no response, and Plaintiffs concluded that there were no accessible Chalets available. Plaintiffs were very disappointed that they were unable to find rooms at the Pines Resort that could house their family of four.  Instead of vacationing at the Pines Resort with Katherine's sister's family, Plaintiffs and their children camped for a few days at a nearby campground.

Plaintiffs allege that they want to experience the fun and excitement at the Pines Resort with their children, but cannot go until Defendants provide accessible rooms of all sizes and types pursuant to ADA and Department of Justice ("DOJ") guidelines.  ADA and DOJ guidelines

1   require that accessible rooms be dispersed among the various classes of guest rooms and provide

2   choices of types of guest rooms, number of beds, and other amenities comparable to the choices

3   provided to other guests.  The failure of HAI to offer an accessible Chalet violates these guidelines

4   and are a barrier that render the Pines Resort inaccessible to Plaintiffs.  Plaintiffs allege that they

5   intend to utilize the Pines Resort once this barrier is removed.

6

7   **I.      DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS**

8          *Rule 12(b)(1) Framework*

9          Federal Rules of Civil Procedure 12(b)(1 )allows for a motion to dismiss based on lack of

10  subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental precept that federal

11  courts are courts of limited jurisdiction.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365,

12  374 (1978); K2 Am. Corp. v. Roland Oil & Gas, 653 F.3d 1024, 1027 (9th Cir. 2011).  Limits

13  upon federal jurisdiction must not be disregarded or evaded.  Owen Equip., 437 U.S. 365, 374

14  (1978); Jones v. Giles, 741 F.2d 245, 248 (9th Cir. 1984).  "It is presumed that a cause lies outside

15  this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

16  jurisdiction."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); K2 Am., 653 F.3d

17  at 1027.  Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the

18  allegations in the complaint, or factual, where the court is permitted to look beyond the complaint

19  to extrinsic evidence.  See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014); Safe Air For

20  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  When a defendant makes a factual

21  challenge "by presenting affidavits or other evidence properly brought before the court, the party

22  opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of

23  establishing subject matter jurisdiction."  Safe Air, 373 F.3d at 1039; see Leite, 749 F.3d at 1121.

24  The court need not presume the truthfulness of the plaintiff's allegations under a factual attack.

25  Wood v. City of San Diego, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011).  The plaintiff must show by

26  a preponderance of the evidence each requirement for subject-matter jurisdiction, and as long as

27  the dispute is not intertwined an element of the plaintiff's cause of action, the court may resolve

28  any factual disputes itself.  Leite, 749 F.3d at 1121.

1     *Defendant's Arguments*

2          HAI argue that Plaintiffs lack standing to pursue relief under the ADA.  First, the FAC

3     does not allege an injury in fact.  Not only are Plaintiffs incorrect in their assertion that ADA

4     regulations require that a Chalet be accessible, but the allegations do not show that making Chalets

5     accessible is readily achievable.  Moreover, as the declaration of the Pines Resort's manager

6     shows, no modifications are necessary because there are fully accessible Lakeside Suites available

7     in the resort's hotel.  Second, the FAC does not adequately allege an intent to return to the resort.

8     The FAC contains only an allegation that Plaintiffs expect and intend to return when the barriers

9     are removed, but this simple profession of an intent to return "someday" is not sufficient.  There

10    are no allegations that address Plaintiffs' proximity to the resort, any past patronage of the resort,

11    specific plans or dates regarding a possible return, and frequency of travel near the resort.  Third,

12    the FAC contains no allegations that adequately demonstrate that Plaintiffs were deterred from

13    returning to the Pines Resort.  Instead, there is merely an allegation that HAI's actions continue to

14    deny Plaintiffs' rights which deters them from patronizing the resort.  Finally, because the Pines

15    Resort has fully accessible and comparable accommodations at its hotel, Plaintiffs have no injuries

16    to be redressed and cannot obtain injunctive relief.

17     *Plaintiffs' Opposition*

18          Plaintiffs argue that they have adequately alleged standing.  With respect to an injury in

19    fact, Plaintiffs argue that that they suffered four injuries.  First, they were denied the ability to stay

20    in the only accommodation at the resort that afforded them privacy and their preferred

21    accommodations because the Chalets are inaccessible to John.  Plaintiffs had actual notice of the

22    inaccessibility of the Chalets, particularly the stairs that John cannot manage and an inaccessible

23    restroom.  Second, they were not permitted to rent the Chalet as a matter of admitted policy

24    because the Chalets are made unavailable to rent by people who use wheelchairs.  Such a policy is

25    a violation of the ADA.  Third, they received no response to their repeated requests to be allowed

26    to rent a Chalet.  Unlike other guests who receive responses to inquiries, Plaintiffs were denied

27    that common courtesy because they requested an accommodation.  Finally, they were deterred

28    from returning to Defendants' premises until the Chalets are made accessible.

Plaintiffs contend that each of the injuries are directly traceable to actions by HAI.  Also, an entire Chalet in 2002 was renovated without making it accessible, even though approximately $22,000 was spent on renovations.  Permits indicate that while making the restroom accessible was considered, that did not occur.  Further, HAI is responsible for maintaining and following a policy of making the Chalets unavailable to the disabled.  Also, as explained by an accessibility expert, HAI has not removed barriers that are readily achievable, such as installing ramping into a Chalet.

With respect to injunctive relief, repeated injury is certain because of HAI's has an admitted exclusionary policy of not allowing disabled persons to rent the Chalets.  Further, the Chalets are inaccessible to John and will continue to be so as long as the Chalets remain in their current configurations.  John has declared that he intends to visit the Pines Resort and wants to do so because of the resort's connection to *The Great Outdoors* movie.  Prior to this litigation, Plaintiffs repeatedly attempted to rent a Chalet without success.

Finally, there is no redressability problem.  The Court can order HAI to comply with the ADA and make its Chalets and other accommodations accessible.[2]

*Legal Standard*

Constitutional standing, which is jurisdictional, ensures that a party invoking federal jurisdiction has an actual case or controversy against the defendant.  See Meland v. Weber, 2 F.4th 838, 843-44 (9th Cir. 2021).  In the context of Title III of the ADA which provides only injunctive relief as a remedy, a plaintiff must show not only the three familiar elements of standing – injury in fact, traceability, and redressability – but also demonstrate a sufficient likelihood future injury, i.e. that he will be harmed again in a similar way.  Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 867 (9th Cir. 2014); see Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc).

---

[2] According to the Pines Resort website, the resort offers rooms in a hotel like building (the Lakeside Suites which offer 20 rooms to rent), the 84 two story Chalets that Plaintiffs attempted to rent, cabins, and luxury rentals.  Plaintiffs did not attempt to rent a Lakeside Suite, cabin, or luxury rental, and the FAC's allegations involve and center around only the inaccessibility of the Chalets.  Therefore, there is no basis for the Court to rule on the inaccessibility of any Lakeside Suite, cabin, or luxury home, nor would the FAC provide a basis for the Court to provide any kind of equitable relief that would require altering a Lakeside Suite, cabin, or a luxury rental.  In short, the FAC only places the inaccessibility of the Chalets, and only the Chalets, at issue.

An injury in fact may be shown in one of two ways:  (1) the plaintiff encountered a barrier at the place of public accommodation that deprived him of the full and equal enjoyment of the facility due to his particular disability; see Oliver v. Ralph's Grocery Co., 654 F.3d 903, or (2) the plaintiff was aware of a barrier that deterred him from attempting to visit a location or use a service because of the alleged ADA non-compliance.  See Namisnak v. Uber Techs., 971 F.3d 1088, 1092-93 (9th Cir. 2020).

Once an injury in fact is demonstrated in one of the above two ways, the requirements of traceability and redressability generally are also demonstrated.  See Chapman, 631 F..3d at 947; Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 n.5 (9th Cir. 2008).  However, for redressability, it must be likely, as opposed to merely speculative, that the injury complained of will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Namisnak, 971 F.3d at 1094.  The Ninth Circuit has explained that the "redressability" requirement will be satisfied if there is "a substantial likelihood that the requested relief will remedy the alleged injury in fact," Yazzie v. Hobbs, 977 F.3d 964, 967 (9th Cir. 2020) (quoting Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 771 (2000)), or "the requested remedy 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'"  Mecinas v. Hobbs, 30 F.4th 890, 900 (9th Cir. 2022) (quoting Renee v. Duncan, 686 F.3d 1002, 1013 (9th Cir. 2012)).

Finally, a likelihood of future injury may be shown in one of two ways:  (1) the plaintiff intends to return to a noncompliant accommodation and is likely to reencounter a discriminatory architectural barrier; or (2) discriminatory architectural barriers deter the plaintiff from returning to the noncompliant accommodation, but that he would return if the barriers were removed.  See Chapman, 631 F.3d at 950; see also Antonio v. Yi, 694 F. App'x 620, 621 (9th Cir. 2017).  That is, an ADA plaintiff must show "either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury."  Chapman, 631 F.3d at 953.  If a plaintiff is "indifferent to returning to the public accommodation, or if the plaintiff's alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability," there will be no future injury.  Id.

1    If a plaintiff establishes standing to sue for injunctive relief on an encountered barrier, he may also

2    sue for injunctive relief as to unencountered barriers related to his disability.  Id. at 944.  But even

3    if an ADA plaintiff demonstrates standing to pursue injunctive relief, any resulting injunctions

4    will "not extend to barriers not affecting persons with the plaintiff's particular disability, barriers

5    that the plaintiff is not reasonably likely to encounter, such as those in areas off limits to

6    customers, or barriers in areas he is unlikely to enter . . . ." Id. at 953.

7          *Discussion*

8          Through arguments relating to both the Rule 12(b)(1) and Rule 12(b)(6) motions, it

9    appears to the Court that there is no dispute as to the traceability element of standing, but there are

10   questions regarding the injury in fact and redressability elements, as well as the likelihood of

11   future harm.  The Court will address these issues separately.

12         1.      Injury in Fact

13         The FAC indicates that none of the 84 Chalets are accessible to individuals such as John

14   because of architectural barriers.  The briefing, as well as images from the Pines Resort website,

15   show that the Chalets are inaccessible to individuals in wheelchairs primarily due to

16   steps/staircases both outside and inside the Chalet.[3]  While John and Katherine did not actually

17   rent or physically encounter any of the stairs or the Chalets, they were aware of the Chalet's

18   design and the stairs from resort's website, and a resort employee expressly informed Katherine's

19   sister that there were no accessible Chalets at the resort.  Because no other rooms except a Chalet

20   appeared to meet their needs, Plaintiffs did not make any reservations to stay at the resort and

21   changed their vacation plans entirely.  These allegations are sufficient to allege that Plaintiffs

22   became aware of an architectural barrier and were deterred from staying at the Pines Resort as a

23   result of that barrier.  See Namisnak, 971 F.3d at 1092-93.

24         Plaintiffs also argue that Defendants maintain a policy of not renting Chalets to disabled

25   individuals and that HAI discriminated against Plaintiffs by not responding to two e-mail

26   inquiries.  With respect to the failure to respond, the FAC describes two unsuccessful e-mail

27

28   [3] The briefing also indicates that the bathrooms in the Chalets are inaccessible to John.  However, the FAC contains
no references to the bathroom, and the opposition does not explain why the bathrooms are inaccessible.

1    inquiries about accessible Chalets.  However, the FAC does not sufficiently indicate that the

2    failure to respond was discriminatory or a violation of the ADA.  In context, the "inquiry

3    allegations" appear simply to be a part of the factual history of Plaintiffs' multiple attempts to rent

4    an accessible Chalet.  There are no easily inferable or obvious ADA violations based on not

5    receiving a response to an e-mail inquiry.  Therefore, Plaintiffs have not demonstrated that they

6    experienced an injury in fact from the failure to receive a response to their e-mail inquiries.

7         With respect to a policy against renting Chalets to disabled individuals, that assertion is

8    based largely on the declaration of Defendants' general manager.  The general manager declared

9    in part:  "The Chalets at the Pine Resorts are not available to guests in wheelchairs."  Alfieri Dec.

10   ¶¶ 3, 4 (Doc. No. 12-2).  The declaration then gives three reasons why the Chalets are unavailable:

11   they were constructed well before 1991, all the Chalets are constructed on mountainsides with

12   significant slopes and are only accessible through stairs, and the Chalets are two story buildings

13   that have internal stairs.  Id.  Contrary to Plaintiffs' opposition, it does not appear that this is an

14   admission that HAI maintains a policy against renting Chalets to disabled individuals.  The

15   relevant paragraphs of the declaration do not use the word "policy," nor do the paragraphs state

16   that there is any kind of standard practice involved.  Rather, the declaration explains why the

17   Chalets are inaccessible, i.e. "not available," to individuals who use wheelchairs.  To wit, there are

18   architectural features that pre-date the ADA and that prevent a person in a wheelchair from

19   entering the Chalets and moving between stories.  Since there are no clear factual allegations of a

20   formal discriminatory policy in the FAC, and as the Alfieri declaration is not so clear by itself to

21   demonstrate the existence of a policy, the Court cannot find at this time the Plaintiffs were harmed

22   through a policy that proscribes renting Chalets to disabled individuals who use wheelchairs.

23        Finally, HAI argues *inter alia* that there is no injury in fact (or danger of future injury)

24   because they did not violate the any ADA Standards.  However, this argument conflates the merits

25   of an ADA claim with the first element necessary for standing.  The Ninth Circuit has explained

26   that the merits of an ADA claim present a different question from that involved in evaluating the

27   injury in fact prong of standing.  See Campbell v. Facebook, Inc., 951 F.3d 1106, 1119 n.9 (9th

28   Cir. 2020); Kirola v. City & Cty. of San Francisco, 860 F.3d 1164, 1175 (9th Cir. 2017).

1   In sum, the Plaintiffs have shown that they have experienced an injury in fact when they

2   were unable to rent an accessible Chalet.

3       2.    <u>Likelihood of Future Harm</u>

4       The Complaint indicates that once a Chalet is made accessible, Plaintiffs would rent the

5   Chalet and enjoy the Pines Resort.  That is, the Complaint alleges that Plaintiffs are deterred from

6   staying at the Pines Resort, but will do so once a Chalet is made accessible.  The Ninth Circuit has

7   found similar allegations to be sufficient for purposes of showing a likelihood of future harm.  <u>See</u>

8   <u>Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.</u>, 867 F.3d 1093, 1099 (9th Cir. 2017).  The

9   allegations in the Complaint and John's declaration provide additional support for the assertion

10  that Plaintiffs would come to the Pines Resort if there was an accessible Chalet.  Plaintiffs have a

11  particular interest in the Pines Resort because of its connection to one of their favorite movies, *The*

12  *Great Outdoors*.  Plaintiffs and their extended family were excited by the prospect of staying at

13  the Pines Resort in a Chalet, and made several unsuccessful attempts to rent an accessible Chalet.

14  When their attempts failed, Plaintiffs' plans for a family vacation materially changed, although the

15  vacation did involve outdoor activity.  At this stage in the proceedings, there is nothing to suggest

16  that their intent to return is not genuine, nor is there any indication that they are indifferent to

17  staying in a Chalet at the Pines Resort.  Therefore, Plaintiffs have adequately demonstrated a

18  likelihood of future injury.  <u>See</u> <u>id.</u>; <u>Chapman</u>, 631 F.3d at 953.

19      3.    <u>Redressability</u>[4]

20      Plaintiffs have not adequately demonstrated redressability.  Plaintiffs' ADA claims are

21  based on two barriers – a failure to make Chalets accessible as part of  "alterations" and a violation

22  of the "dispersion" rule of 2010 ADA Standard § 224.5/1991 ADA Standard 9.1.4 (a certain

23  number of accessible rooms must be dispersed among the various classes of rooms).  As explained

24  more fully *infra*, in order to prevail under the ADA, Plaintiffs will have to show either that there

25  were feasible ways to make the Chalets accessible during the alteration process or that removing

26

27  [4] The parties' briefing regarding redressability is not extensive.  Nevertheless, redressability is a necessary element of
this Court's jurisdiction over Plaintiffs ADA claims, and the ADA claims are the basis for this Court's exercise of
28  federal question jurisdiction.  The Court must satisfy itself that subject matter jurisdiction actually exists.  <u>See</u> <u>Pacific</u>
<u>Gulf Shipping Co. v. Vigorous Shipp & Trading S.A.</u>, 992 F.3d 893, 896 (9th Cir. 2021).

architectural barriers are readily achievable.  However, neither the opposition nor the FAC have adequately indicated that it is possible to make a Chalet accessible to John, either by removing barriers or through an alteration process.

The FAC alleges that unspecified alterations occurred and that removal of barriers is readily achievable, but provides no specific factual allegations in support of these legal conclusions.  On the other hand, Plaintiffs' opposition indicates that its accessibility expert opines that the Chalets can be made accessible.  The Chalets are built on a slope, have external stairs that lead to the entrance, and are two levels/stories that are separated by internal stairs.  It appears that the internal stairs connect the bed and bathroom on one floor with the kitchenette, pull-out sofa, living area, and entrance on the other floor.  Plaintiffs' expert opines in part that an entrance ramp could be installed to remove the barrier of the external stairs with respect to Chalet 103.  Assuming that this is true (Defendants object that the expert did not adequately account for the slope at Chalet 103),[5] Defendants rightly point out that Plaintiffs' opposition does not address the internal stairs of Chalet 103.

The internal steps serve a critical function by uniting the downstairs amenities and features from the upstairs amenities and features, specifically they connect the bathroom and main sleeping area on the lower level to the upper living area, kitchenette, and entrance/egress.  For an individual such as John who requires a wheelchair, an accessible alternative to the external entrance stairs solves only one critical barrier.  An equally critical usability barrier is the internal stairs, for which Plaintiffs have not described a way of modifying or otherwise removing them.  While an external ramp allows entrance, it does not permit John access to toilette facilities.  In the absence of Plaintiffs addressing the internal stairs, the internal stairs at this time appear to be a barrier that by themselves make the Chalets inaccessible and unusable to John as a temporary lodging.

For purposes of redressability, therein lies the rub.  If there is no feasible alteration or readily achievable solution to the problem of the internal stairs, then the Court cannot order injunctive relief with respect to the internal stairs.  If the internal stairs remain, then it appears that

---

[5] Defendants' reply states that Plaintiffs sent their expert to stay in Chalet 103 in late April 2022 without notice and without following the procedures outlined in Rule 34.  If Defendants believe that Plaintiffs have violated or intend to violate the federal discovery rules, then Defendants may file an appropriate motion with the Magistrate Judge.

John will continue to experience the same barrier and injury that led to the filing of this case – he will not be able to rent a Chalet because it will remain inaccessible and unusable to him, irrespective of any other barrier in the Chalets that can be removed.  That is, the Court will be unable to issue any relief that will permit John to rent a Chalet that is adequately accessible to him.  See Yazzie, 977 F.3d at 967.

Again, neither the FAC nor the opposition address the internal stairs in general or their effect on John in particular.  Given the apparent importance of the internal stairs to this case, that must change.  The Court will permit Plaintiffs to amend the FAC to address the Chalets' internal stairs, both in terms of their impact on John and the feasibility and achievability of removing or altering the stairs.  A full construction proposal with precise figures is not necessary to address the internal and external stairs, but Plaintiffs must offer construction or architectural proposals that at least plausibly indicate feasibility (for purposes of an "alteration" claim) or achievability (for purposes of the dispersion claim).[6]  Cf. Whitaker v. Sheikh, 2022 U.S. Dist. LEXIS 77865, *16 (E.D. Cal. Apr. 27, 2022) (holding that a plaintiff must plausibly allege that the removal of a barrier is readily achievable).

In sum, Plaintiffs have not adequately demonstrated redressability and thus, standing.  Therefore, dismissal of the ADA claims for lack of jurisdiction is appropriate.


**II.**	**DEFENDANT'S RULE 12(b)(6) MOTION[7]**

*Rule 12(b)(6) Framework*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Benavidez v. County of

---

[6] Depending on the nature of any amendment or defense attack thereon, jurisdictional issues surrounding the feasibility or achievability of any solution regarding the internal stairs are likely to be so intermeshed with the merits of an ADA claim that the Court will be unable to resolve said issues in the context of a Rule 12(b)(1) motion.  See Wilkins v. United States, 13 F.4th 791, 796 (9th Cir. 2021).

[7] Because the Court is granting the Rule 12(b)(1) motion with leave to amend and Plaintiffs' Rule 15(d) motion, the Court addresses Defendants' Rule 12(b)(6) motion so that Plaintiffs can correct other raised pleading deficiencies.

1    San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).  However, complaints that offer no more than

2    "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

3    do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Benavidez, 993 F.3d at 1145.  The Court is "not

4    required to accept as true allegations that contradict exhibits attached to the Complaint or matters

5    properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

6    deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media

7    Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a

8    complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

9    plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial

10   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

11   inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers

12   v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer

13   possibility," but less than a probability, and facts that are "merely consistent" with liability fall

14   short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  Plaintiffs cannot "rely on

15   anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded

16   factual allegations to advance to discovery." Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1177

17   (9th Cir. 2021).  If a motion to dismiss is granted, "[the] district court should grant leave to amend

18   even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962

19   (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or

20   the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of

21   L.A., 828 F.3d 837, 842 (9th Cir. 2016).

22        *Defendant's Argument*

23        HAI argues that the room dispersal rule found in 2010 ADA Standard § 224.5 does not

24   require a defendant to offer an accessible and non-accessible version of the same room type to

25   guests.  The standard only mandates dispersion among the various classes of guest rooms offered

26   by a hotel.  2010 ADA Standard § 103 further confirms that a hotel is permitted to allow an

27   alternative room with substantially equivalent or greater accessibility of usability.  The emphasis

28   of the standards is on providing the most accessible room that comes closest to meeting an

1   individual's luxury standard, not on providing an accessible room that is identical to another non-

2   accessible room that is offered at the accommodation.  The "equivalent facilitation" requirement

3   provides for an equivalent range of options, which may include room size, cost, view, and

4   bathroom fixtures.  The equivalent facilities rule does not require hotels to offer an identical but

5   accessible room.  Here, the Chalet has one separate bedroom (with either two queen beds or one

6   king bed) downstairs and a pull-out sofa in an upstairs living room.  The Lakeside Suites have

7   mobility accessible rooms with a separate bedroom with one king bed and a living room with a

8   pull-out sofa.  The accessible Lakeside Suite thus, has the exact sleeping configuration as the

9   Chalet and is "comparable" to the Chalet for purposes of § 224.5.

10      Additionally, remediation or removal of a barrier must be "readily achievable."  To show

11  that remediation is readily achievable, the Plaintiffs must articulate a plausible proposal for barrier

12  removal, the costs of which do not clearly exceed benefits.  However, the Complaint is devoid of

13  any facts that meet this burden.  There is no discussion about how it is readily achievable to make

14  accessible a two story chalet with interior and exterior stairs, that is surrounded by gravel, and that

15  is built on a natural slope that exceeds 2%.  Instead, there is only a boilerplate allegation that

16  remediation is readily achievable.

17      With respect to the Unruh Act claim, Plaintiffs cannot recover damages unless the

18  violation actually denied him or her equal access to some public facility.  Plaintiffs cannot

19  truthfully allege that they were actually denied access to the hotel because of the admitted

20  availability of comparable ADA accessible rooms.

21      Finally, with the dismissal of all federal claims, the Court should decline to exercise

22  supplemental jurisdiction over the remaining state law claims.

23      *Plaintiffs' Opposition*

24      Plaintiffs argue that the FAC plausibly alleges an ADA claim based on the lack of

25  dispersion of accessible rooms and failure to provide access after remodeling.  With respect to

26  dispersion, the FAC alleges that the lack of dispersion meant that Plaintiffs could not stay at the

27  resort.  The allegations, along with judicially noticed facts from the website, show that there are

28  four classes of accommodations offered, but the only accessible room (the Lakeside Suite) lacked

13

sleeping privacy, was over 200 sq. ft. smaller, did not have a full kitchen and stove, did not have a dedicated entrance, did not have a cooking countertop, and did not offer a private barbecue.  The Lakeside Suite is not comparable to the Chalets, and the Chalets are not accessible.  The Chalets could have architectural barriers removed, such as the installation of a ramp and paths of travel from the parking area to the entrance of the Chalet.

With respect to alterations, the FAC alleges that multiple Chalets underwent alterations, yet none of the Chalets were made accessible.  In particular, Plaintiffs' architectural accessibility expert Schraibman has indicated that Chalet 103 was substantially renovated in 2002, both internally and externally, including railing, the porch and front entrance.  It is estimated that the cost of the renovation was about $22,000.  However, even though Defendants contemplated making the bathroom accessible and could have installed a ramp for about $4,000.00, Chalet 103 was not made accessible in any respect.  This is a violation of the 1991 ADA Standards§ 4.1 *et seq.*

Finally, Plaintiffs argue that because plausible ADA claims are stated, it is inefficient to decline to exercise supplemental jurisdiction over the state law claims.

### *Defendant's Reply*

In part, HAI replies that Plaintiffs have not shown a violation of the dispersion rule since the Lakeside Suite is substantially equivalent to the Chalets.  Both offer a single king bed and a pull out sofa in a living area.

HAI also emphasizes that making a Chalet accessible is not "readily achievable." Plaintiffs' expert acknowledges that the Chalets are built on inclines and does not argue that a key feature of the Chalets that make them inaccessible to Plaintiffs, i.e. the bedroom and bathroom are located on the lower floor and are accessible only by internal stairs, is readily achievable.

Finally, HAI contends that there is no viable ADA claim based on alterations.  The FAC does not allege that any alteration to Chalet 103 was an "alteration" for purposes of the ADA or that any work performed on Chalet 103 in 2002 affected its usability.  However, even if there was some alterations to Chalet 103 with respect to the bathroom, that is irrelevant because Chalet 103 has two stories with the bathroom and bedroom downstairs and the kitchen and pull-out sofa on

14

the entry floor.  Without an elevator, there is no way that John could have gotten down to the bathroom and bedroom in Chalet 103.  Further, the work performed on Chalet 103 in 2002 was eight years prior to HAI's 2010 purchase of the resort.  Plaintiffs do not cite authority that the prior owners' work imposed an obligation on HAI.

### *Title III of the ADA*

Congress enacted Title III of the ADA to prohibit disability discrimination in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); see Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1175 (9th Cir. 2021).  A "public accommodation" includes "an inn, hotel, motel, or other place of lodging . . . ."  42 U.S.C. § 12181(7)(A).  To succeed on an ADA Title III claim, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability.  Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1212 (9th Cir. 2020); Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1033 (9th Cir. 2020).  Generally, whether a plaintiff is denied a public accommodation depends on whether there was a violation of the applicable ADA Standards.  See Chapman, 631 F.3d at 945; Johnson v. Wayside Props., 41 F.Supp.3d 973, 976 (E.D. Cal. 2014); Moeller v. Taco Bell Corp., 815 F.Supp.2d 831, 847 (N.D. Cal. 2011); see also Kohler v. Bed Bath & Beyond, 778 F.3d 827, 830 (9th Cir. 2015).  Public accommodations that were constructed or altered after January 26, 1993 must comply with either the 1991 ADA Standard or the 2010 ADA Standard, depending on the date the construction or alterations began.  Love v. Marriott Hotel Servs., 40 F.4th 1043, 1048 n.1 (9th Cir. 2022); see 28 C.F.R. § 36.406.  Specifically, for new construction or alterations commenced after March 15, 2012, the 2010 ADA Standards[8] apply.  See 28 C.F.R. § 36.406(a)(3).  For new construction or alterations commenced after January 26, 1993, but before September 15, 2010, the 1991 ADA Standards[9] apply.  See 28 C.F.R.

---

[8] The 2010 ADA Standard can be found at 28 C.F.R. Part 36 App'x B.

[9] The 1991 ADA Standard is found at 28 C.F.R. Part 36 App'x D.

§ 36.406(a)(1); <u>Love</u>, 40 F.4th at 1048 n.1.  For new construction or alterations commenced on or after September 15, 2010 and before March 15, 2012, then either the 1991 ADA Standards or the 2010 Standards may apply.  <u>See</u> 28 C.F.R. § 36.406(a)(2).  Facilities that were constructed prior to January 1993 and that have not been altered are not required to comply with either the 1991 ADA Standards or the 2010 ADA Standards, but are still required to remove "architectural barriers" where removal is "readily achievable." <u>Love</u>, 40 F.4th at 1048 n.1.

>    *Discussion*

>    1.    <u>ADA – Alteration</u>

Under the ADA, if a facility or part thereof is "altered . . . in a manner that affects or could affect usability of the facility or part thereof," it is unlawful discrimination to fail to "make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals with wheelchairs." 42 U.S.C. § 12183(a)(2).  The concept of "usability" includes changes that affect the usability of the facility, not just changes that relate directly to access by individuals with disabilities.  <u>See Roberts v. Royal Atl. Corp.</u>, 542 F.3d 363, 369 (2d Cir. 2008); <u>D'Lil v. Riverboat Delta King, Inc.</u>, 59 F.Supp.3d 1001, 1012 (E.D. Cal. 2014).  "Alterations" seem to exclude "modifications that essentially preserve the status and condition of the facility, rather than rendering it materially 'new' in some sense."  <u>Roberts</u>, 542 F.3d at 370; <u>D'Lil</u>, 59 F.Supp.3d at 1012.  A determination of whether work performed is an "alteration" under the ADA requires consideration of the nature, cost, degree, scope, and purpose of the work performed.  <u>See Roberts</u>, 542 F.3d at 370; <u>D'Lil</u>, 59 F.Supp.3d at 1012.  It is the plaintiff's burden to plausibly allege that a particular modification constitutes an "alteration" under the ADA.  <u>Cf. Roberts</u>, 542 F.3d at 371 (setting burdens for demonstrating that an alteration was made in the context of summary judgment); <u>Whitaker</u>, 2022 U.S. Dist. LEXIS 77865 at *16 (requiring the plaintiff to plead that the removal of a particular barrier is "readily achievable"); <u>cf. also Lopez</u>, 974 F.3d at 1038 (adopting *Roberts* on the burdens involved for determining if removal of a barrier is "readily achievable").

Here, the FAC alleges that many of the Chalets have been renovated over the years, that alterations have occurred since January 26, 1993, which subjected the Chalets to the 1991 ADA

Standards, and that alterations since January 26, 1993 have triggered requirements for the removal of barriers.  See FAC ¶ 1, 11, 28.  However, the FAC fails to identify and describe any modification and fails to explain how any modification may have affected the "usability" of the Chalet.  Without such allegations, it is impossible to determine whether any Chalet was "altered" for purposes of the ADA.  The FAC's allegations regarding "alterations" are simply too conclusory to plausibly indicate that HAI made ADA "alterations" to any Chalet.  See Whitaker, 985 F.3d at 1177.  Therefore, dismissal of any ADA claim based on a discriminatory "alteration" is appropriate.  See id.; Whitaker, 2022 U.S. Dist. LEXIS 77865 at *16.

Plaintiffs' opposition explains that work permits were issued in 2002 for Chalet 103.[10]  According to Plaintiffs, the permit records indicate that the kitchen and living area were removed, a new bath and a new furnace on the upper floor were installed, and a new front porch and new railings were installed.  See Doc. No. 15 at 7:11-17.  Plaintiffs argue that the permit records also indicate that a handicap accessible restroom was contemplated, but it is unknown if an accessible bathroom was ultimately installed.  See id. at 7:17-21.  These representations indicate that significant renovations occurred and appear to be beyond what could be considered routine maintenance or something that merely maintained the status quo.  Installing a new bath, kitchen, living area, and porch are significant renovations that would affect the usability of Chalet 103 as a temporary or transitory lodging.  Therefore, the opposition suggests that Plaintiffs could plausibly allege that there were ADA "alterations" to Chalet 103 in 2002.[11]  However, although it is likely that Plaintiffs can plausibly allege "alterations" to Chalet 103, there are other concerns.

First, in their reply, HAI states that it purchased the Pines Resort (and thus, Chalet 103) in 2010.  Title III of the ADA prohibits an owner[12] of a public accommodation from engaging in acts

---

[10] The Court does not consider Plaintiffs' arguments and representations for the purpose of determining whether the FAC states a claim, rather, the Court considers the arguments and representations for the purpose of determining whether dismissal should be with or without prejudice.  See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

[11] The Court notes that the opposition states that part of the resort was renovated in 1990.  See Doc. No. 15 at 2:10-11.  However, renovations performed in 1990 are not subject to either the 1991 ADA Standard or the 2010 ADA Standards regarding "alterations."  See 28 C.F.R. §§ 36.406(a)(1), (a)(3); Love, 40 F.4th at 1048 n.1.

[12] Of course, 42 U.S.C. § 12182(a) includes owners, lessors, lessees, and operators of public accommodations as those who may be liable.  The Court simply will use the shorthand "owner" for purposes of this order.

of disability discrimination.  42 U.S.C. § 12182(a); <u>Lonberg v. Sanborn Theaters, Inc.</u>, 259 F.3d

1029, 1033 (9th Cir. 2001);[13] <u>De La Rosa v. Lewis Foods of 42nd Street, LLC</u>, 124 F. Supp. 3d

290, 294-95 (S.D.N.Y. 2015).  In separate statutory provisions, Title III then describes various

actions or conditions that constitute disability discrimination.  <u>See</u> 42 U.S.C. §§ 12182(b),

12183(a); <u>Lonberg</u>, 256 F.3d at 1033; <u>De La Rosa</u>, 124 F. Supp.3d at 294-95.  Included within the

acts of discrimination are the failure to make "alterations" to the maximum feasible level of

accessibility.  <u>See</u> 42 U.S.C. § 12183(a)(2); <u>De La Rosa</u>, 124 F.Supp.3d at 294.  Under the Ninth

Circuit framework for Title III liability, Plaintiffs must show:  (1) John is a "disabled individual,"

(2) Defendants own the Pines Resort, which is a public accommodation, and (3) Defendants

engaged in "disability discrimination" by failing to make "alterations" to the maximum feasible

extent of accessibility.  <u>See</u> 42 U.S.C. §§ 12181(a), 12183(a)(2); <u>Doe</u>, 982 F.3d at 1212 (setting

the three elements that a Title III plaintiff must meet, including that the defendant engaged in

disability discrimination); <u>Lopez</u>, 974 F.3d at 1033 (same); <u>see also</u> <u>De La Rosa</u>, 124 F.Supp.3d at

295-96.  Thus, it is a person or entity's conduct as an owner, not merely their status as an owner,

that is the basis for liability under ADA Title III.  <u>See</u> <u>Bax v. Doctors Med. Ctr. of Modesto, Inc.</u>,

393 F. Supp. 3d 1000, 1009 (E.D. Cal. 2019); <u>De La Rosa</u>, 124 F. Supp. 3d at 295-96; <u>Lema v.</u>

<u>Carson Hotel, LLC</u>, 2012 U.S. Dist. LEXIS 191189, *29 (C.D. Cal. June 19, 2012).  Because it is

the defendant who must have engaged in discriminatory conduct, the current owner is not liable

for an "alteration" in violation of § 12183(a)(2) if the "alteration" was performed by the prior

owner.  <u>See</u> <u>De La Rosa</u>, 124 F.Supp.3d at 296; <u>Lema</u>, 2012 U.S. Dist. LEXIS 191189 at *32; <u>see</u>

<u>also</u> <u>Paulick v. Ritz Carlton Hotel Co., Inc.</u>, 2011 U.S. Dist. LEXIS 142137, *18-*19 (N.D. Cal.

Dec. 8, 2011) (holding that a current owner who did not design or construct a hotel did not engage

in acts of discrimination against the plaintiff in violation of 42 U.S.C. § 12183(a)(1)); <u>but see</u>

<u>Lemmons v. Ace Hardware Corp.</u>, 2014 U.S. Dist. LEXIS 91347, *32-*35 (holding that current

owner may be held liable for alterations by a prior owner that violated § 12183(a)(2)).

　　　　In this case, if the 2002 "alterations" were made by the prior owners of the Pines Resort

---

[13]As amended on denial of reh'g en banc, 271 F.3d 953 (9th Cir. 2001).

1   and not HAI, then HAI did not engage in discrimination through the alterations process and cannot

2   be liable under 42 U.S.C. § 12183(a)(2) for alterations that were not made to the maximum

3   feasible extent of accessibility.[14]  See De La Rosa, 124 F.Supp.3d at 296; Lema, 2012 U.S. Dist.

4   LEXIS 191189 at *32; see also Paulick, 2011 U.S. Dist. LEXIS 142137 at *18-*19.  In order for

5   amendment to not be futile, Plaintiffs must identify specific alterations that were actually

6   performed by HAI, not by prior owners.

7        Second, the only representation of an alteration is with respect to a single Chalet, Chalet

8   103.  Because no other Chalets appear to be accessible, Chalet 103 would need to be altered so as

9   to become accessible (as described in 1991 ADA Standard § 9.2).  See 1991 ADA Standard §

10  9.1.5;[15] Equal Rights Ctr. v. Hilton Hotels Corp., 2009 U.S. Dist. LEXIS 126645, *25-*26 (D.C.

11  Cir. Mar. 25, 2009).  As discussed above, Plaintiffs' opposition indicates that its accessibility

12  expert opines that the Chalets can be made accessible in part through the use of an entrance ramp,

13  but Plaintiffs do not discuss or make representations about the internal stairs of Chalet 103.

14  Again, the external and internal stairs both appear to be critical barriers that independently make

15  the Chalets inaccessible and unusable to John.  Thus, in order to allege a plausible alteration claim,

16  Plaintiffs must at least describe how the barriers of the internal and external staircases could have

17  been altered/removed in the 2002 alteration process so that John could actually use and access

18  Chalet 103.  Cf. Whitaker, 2022 U.S. Dist. LEXIS 77865 at *16.

19        Permitting amendment is the general rule.  See Ebner, 838 F.3d at 962; Steckman v. Hart

20  Brewing, 143 F.3d 1293, 1298 (9th Cir. 1998).  Because it is not clear that that amendment would

21  be futile, dismissal will be with leave to amend.

22        2.      ADA – Dispersion or Architectural Barrier

23        The FAC does not adequately explain what ADA Standards may be applicable to the Pines

24  Resort, and, as discussed above, the FAC does not adequately establish that any "alterations"

25

26  [14] This does not mean, however, that Defendants cannot be liable for failing to remove a barrier at the Pines Resort
where removal is readily achievable.  See 42 U.S.C. § 12182(b)(2)(A)(iv); Love, 40 F.4th at 1048; Roberts, 542 F.3d
at 369; Lema, 2012 U.S. Dist. LEXIS 191189 at *33.

27
[15] Because the alteration occurred in 2002, the 2010 ADA Standard would not apply.  See 28 C.F.R. § 36.406(a)(1);
28  Love, 40 F.4th at 1048 n.1.

1   occurred.  Because the resort's website indicates that the resort's current iteration dates to 1977,

2   neither the 1991 ADA Standards nor the 2010 ADA Standards set absolute requirements for the

3   resort.  See Love, 40 F.4th at 1048 n.1 (holding that facilities that were constructed prior to 1993

4   and have not been altered "are not required to comply with the 1991 or 2010 Standards . . . .");

5   Hernandez v. Roberts of Woodside, 2022 U.S. Dist. LEXIS 1497, *48-*52 (N.D. Cal. Jan. 3,

6   2022) (rejecting the argument that an existing facility's technical non-compliance with ADA

7   Standards meant that the existing facility was in violation of the ADA).  Instead, as an existing

8   facility, the ADA requires the Pines Resort to remove any "architectural barrier" if removal is

9   "readily achievable."  See 42 U.S.C. § 12182(b)(2)(A)(iv); Love, 40 F.4th at 1048 n.1; Lopez, 974

10  F.3d at 1034.

11         Regrettably, the ADA does not define the term "architectural barrier."  Mielo v. Steak 'n

12  Shake Operations, Inc., 897 F.3d 467, 477 (3d Cir. 2018).  The Ninth Circuit has found that the

13  phrase "most naturally encompasses a business' buildings and surrounding grounds."  Karczewski

14  v. DCH Mission Valley Ltd. Liab. Co., 862 F.3d 1006, 1013-14 (9th Cir. 2017).  Some courts

15  have relied on the DOJ's ADA Guide for Small Business and concluded that "architectural

16  barriers" are "physical features that limit or prevent people with disabilities from obtaining the

17  goods or services that are offered."  Mielo, 897 F.3d at 477; Kahn v. Cleveland Clinic Fla. Hosp.,

18  2019 U.S. Dist. LEXIS 121499, *31 (S.D. Fla. July 22, 2019).  Other courts have relied on the

19  very similar definition of the ADA Technical Assistance Manual to define an "architectural

20  barrier" as "physical elements of a facility that impede access by people with disabilities."

21  Hernandez, 2022 U.S. Dist. LEXIS 1497 at *44-*45;  Machowski v. DCT Props., LLC, 2021 U.S.

22  Dist. LEXIS 251423, *7 n.3 (C.D. Cal. Dec. 14, 2021); Sanford v. Del Taco, Inc., 2006 U.S. Dist.

23  LEXIS  29561, *3 (E.D. Cal. May 12, 2006); Mantic Ashanti's Cause v. Darwish Plaza, 2006 U.S.

24  Dist. LEXIS 33650, *15 (S.D. Cal. Apr. 19, 2006).  Although not absolutely binding, courts

25  nevertheless treat ADA Standards as providing important guidance for determining whether there

26  is an "architectural barrier" at an existing facility.  See Hernandez, 2022 U.S. Dist. LEXIS 1497 at

27  *51-*52; Gathright-Dietrich v. Atlanta Landmarks, Inc., 435 F.Supp.2d 1217, 1226 (N.D. Ga.

28  2005); Hubbard v. 7-Eleven, Inc., 433 F.Supp.2d 1134, 1138 (S.D. Cal. 2006); White v. Cinemark

1   USA, Inc., 2005 U.S. Dist. LEXIS 42134, *12 (E.D. Cal. 2005); Pascuiti v. New York Yankees,

2   87 F. Supp. 2d 221, 226 & n.7 (S.D.N.Y. 1999); see also Kirola, 860 F.3d at 1182 n.8.

3          Removal of a barrier is "readily achievable" if it is "easily accomplishable and able to be

4   carried out without much difficulty or expense."  42 U.S.C. § 12181(9); Lopez, 974 F.3d at 1034.

5   Factors to consider in determining whether removal is "readily achievable" include the costs of the

6   project, the resources of the facility/defendant, and the nature of the facility and its operations.

7   See 42 U.S.C. § 12181(9); Molski v. Foley Estates Vineyard, 531 F.3d 1043, 1047 n.2 (9th Cir.

8   2008); see also Lopez, 974 F.3d at 1038.  However, even if the removal of an architectural barrier

9   is not "readily achievable," a defendant may still be liable if it fails to make its "facilities,

10  privileges, advantages, or accommodation available through alternative methods" that are

11  themselves "readily achievable."  See 42 U.S.C. § 12182(b)(2)(A)(v); Lopez, 974 F.3d at 1034.

12  Although a plaintiff need not plead specific costs or present a full construction or architectural

13  proposals, the plaintiff must plausibly allege the removal of a particular barrier or the provision of

14  an "alternative method" is "readily achievable."  See Whitaker, 2022 U.S. Dist. LEXIS 77865 at

15  *16; cf. Lopez, 974 F.3d at 1035, 1039 (discussing burdens in the context of summary judgment).

16         Here, the FAC alleges a violation of 2010 ADA Standard § 224.5.  That section requires

17  that accessible rooms "shall be dispersed among the various classes of guest rooms," and that a

18  public accommodation "provide choices of types of guest rooms, number of beds, and other

19  amenities comparable to the choices provided to other guests."  2010 ADA Standard § 224.5.[16]

20  The advisory comment to § 224.5 provides that "[f]actors to be considered in providing an

21  equivalent range of options may include, but are not limited to, room size, bed size, cost, view,

22  bathroom fixtures such as hot tubs and spas, smoking and non-smoking, and the number of rooms

23  involved."  Id.  Accordingly, § 224.5 does not require a hotel to offer an accessible and non-

24  accessible version of the same room type, but does require a hotel to disperse accessible rooms

25  among the various classes of sleeping accommodations offered.  See Brooke v. Sunstone Von

26

27  ---

[16] Although the FAC does not indicate that the 1991 ADA Standards are applicable, the Court notes that 1991 ADA Standard § 9.1.4 is very similar to 2010 ADA Standard § 224.5.  Cf. 1991 ADA Standard § 9.1.4 with 2010 ADA Standard § 224.5; cf. also Mortland v. Castle Hosp., LLC, 2022 U.S. Dist. LEXIS 149770, *16 (E.D. Cal. Aug. 22, 2022) (noting the similarity of the two standards).

28

1  Karman, LLC, 2020 U.S. Dist. LEXIS 196917, *6 (C.D. Cal. Aug. 25, 2020); Brooke v. Grand

2  Hyatt SF LLC, 2020 U.S. Dist. LEXIS 76584, *3 (N.D. Cal. Apr. 30, 2020); see also Brooke v.

3  Superb Hospitality, LLC, 2021 U.S. Dist. LEXIS 61403, *27 (E.D. Cal. Mar. 29, 2021); see also

4  Access 4 All, Inc. v. The Atl. Hotel Condo. Ass'n, Inc., 2005 U.S. Dist. LEXIS 41601, *46 n.21

5  (S.D. Fla. Nov. 22, 2005) (addressing 1991 ADA Standards).

6         In the absence of a contrary argument, and accepting § 224.5 as persuasive guidance, the

7  Chalets appear materially different from the Lakeside Suites.  The Pines Resort website separates

8  the Chalets from the Lakeside Suites, and the Chalets are 84 individual cabins, while the Lakeside

9  Suites are rooms in a single building.  While both the Chalets and accessible Lakeside Suites offer

10  either a king bed or two queen beds and a separate pull-out sofa bed, there are significant

11  differences between the two lodgings.  Plaintiffs' opposition indicates that the Chalets are about

12  200 to 300 square feet larger than the Lakeside Suites and have their own dedicated entrances,

13  fully stocked kitchenettes, large granite countertops, hardwood floors, two sleeping areas on

14  separate floors, and private decks with a table and barbecue.  The accessible Lakeside Suites are

15  about 200 to 300 square feet smaller than the Chalets and do not have kitchenettes, large granite

16  countertops, a dedicated entrance, a separated sleeping area (the sleeping area is a shared open

17  space with the bed(s) and the sleeper sofa a few feet apart), or decks that have tables and

18  barbecues.  Further, Plaintiffs' opposition indicates that Defendants charge more for an accessible

19  Lakeside Suite than for a Chalet.  These representations indicate that the Chalets and the Lakeside

20  Suite are a different class of guest room that have materially different costs, sizes, and amenity

21  options.  Cf. 2010 ADA Standard § 224.5.  Thus, the Chalets and the accessible Lakeside Suites

22  do not appear to be substantially equivalent or comparable.  Moreover, the presence of external

23  and internal stairs (and possibly a bathroom that is in some unalleged way "inaccessible") clearly

24  prevent John from renting a Chalet.  Given the presence of stairs and the nature of the Chalets,

25  Plaintiffs' opposition indicates that the FAC can be amended to provide sufficient factual details

26  that would indicate the presence of "architectural barriers" with respect to the Chalets.

27         Nevertheless, and again as discussed above, it appears that in order to make a Chalet

28  accessible, the critical barriers of both the external and internal staircases must be addressed.

1  Even if every other barrier found in the Chalets (or Chalet 103 in particular) were remedied, until

2  the external *and* internal staircases are removed or modified it appears that the Chalets will

3  continue to be inaccessible and unusable to John as a lodging.   In such circumstances, an

4  injunction would not prevent John from being exposed to a barrier, nor would a corrective

5  injunction permit him to actually use a Chalet.  Again, Plaintiffs do not address in any way the

6  internal staircase.  While the Court will permit amendment, an amended complaint must plausibly

7  allege how the removal or modification of the external and internal staircases (as well as any other

8  "architectural barrier" that John is aware of and seeks a remedy for) is "readily achievable" in

9  order to state a plausible claim.  See Whitaker, 2022 U.S. Dist. LEXIS 77865 at *16; cf. Lopez,

10 974 F.3d at 1035, 1039.

11      In sum, because the FAC does not adequately allege that the removal of an "architectural

12 barrier" is "readily achievable," dismissal of this ADA claim with leave to amend is appropriate.

13           3.    State Law Claims

14      As discussed above, the Court has found that the FAC fails to allege plausible ADA

15 claims, but the dismissal will be with leave to amend.  It is possible that Plaintiffs may not amend,

16 in which case the FAC would consist of nothing more than state law claims.  At this early stage,

17 the Court would not retain jurisdiction over state law claims alleged by California citizens against

18 a fellow California citizen.  See 28 U.S.C. § 1367(c)(3); Parra v. PacifiCare Ariz., Inc., 715 F.3d

19 1146, 1156 (9th Cir. 2013).  Because the Court is dismissing the ADA claims, the Court will also

20 decline to exercise supplemental jurisdiction over the state law claims.  However, if Plaintiffs

21 choose to amend their ADA claims, then they may reassert their state law claims in the amended

22 complaint.

23      With respect to the Unruh Act in particular, HAI argues that Plaintiffs lack standing

24 because they suffered only abstract discrimination and were not directly discriminated against.

25 HAI is correct that California courts recognize that a plaintiff has no standing to bring an Unruh

26 Act claim if the discrimination is only abstract.  See White v. Square, Inc., 7 Cal.5th 1019, 1025

27 (2019); Thurston v. Omni Hotels Mgmt. Corp., 69 Cal.App.5th 299, 306 (2021).  A plaintiff must

28 have actually been the victim of the defendant's discriminatory action.  See White, 7 Cal.5t h at

23

1    1025; Thurston, 69 Cal.App.5t h at 306.  Thus, a plaintiff who has transacted with a defendant and

2    who has been subject to discrimination has standing under the Unruh Act.  White, 7 Cal.5th at

3    1026; see Thurston, 69 Cal.App.5th at 306 ("[The Unruh Act] is confined to discrimination against

4    recipients of the business establishment's . . . goods, services, or facilities.").

5           Here, Plaintiffs through Katherine's sister were informed that there were no accessible

6    Chalets available to rent and Katherine sent two e-mail inquiring about an accessible Chalet.  The

7    FAC shows that Plaintiffs were attempting to make concrete and bona fide vacation plans at the

8    Pines Resort, but were unable to do so because they were told that there were no accessible

9    Chalets.  If Plaintiffs can adequately plead a violation of the ADA, then it is unclear why they will

10   not also be able to demonstrate standing to pursue an Unruh Act claim in light of these facts.  At

11   this time, the Court cannot hold that Plaintiffs lack standing to pursue an Unruh Act claim.

12   Therefore, the Unruh Act claim will be dismissed without prejudice through operation of 28

13   U.S.C. § 1367(c)(3), just like every other state law claim.

14

15   **III.**     **PLAINTIFFS' MOTION TO AMEND**

16        *Parties' Argument*

17          Plaintiffs argue that, since the filing of the FAC, their expert stayed at the Pines Resort and

18   identified additional barriers with respect to the Chalets.  Also, Plaintiffs themselves experienced

19   barriers at the Pines Resort's restaurant.  Under the relevant factors of Rule 15(d), it is appropriate

20   to permit amendment to include the newly encountered and discovered barriers.

21          HAI has not filed an opposition to Plaintiffs' motion to amend.

22        *Discussion*

23          Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings.  To add

24   claims that are based on conduct that occurred prior to the filing of a pleading, the proper

25   procedural mechanism is an amendment through Rule 15(a).  Eid v. Alaska Airlines, Inc., 621

26   F.3d 858, 874 (9th Cir. 2010).  Under Rule 15(a), if a party can no longer amend a pleading as a

27   matter of course, then the "party may amend its pleading only with the opposing party's written

28   consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  Rule 15(a)(2) motions are generally granted with extreme liberality.  C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011).  To add claims that are based on conduct that occurred after the filing of a pleading, the proper procedural mechanism is a supplement through Rule 15(d).  Eid, 621 F.3d at 874.  In relevant part, Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. . . ."  Fed. R. Civ. P. 15(d).  Rule 15(d) is a tool of judicial economy and efficiency that enables a court to provide more complete relief without the necessity of separate actions; as long as the supplement has "some relation" to the original pleading, Rule 15(d) supplementation is a favored procedure.  Keith v. Volpe, 858 F.2d 467, 473-75 (9th Cir. 1988).  The same factors are generally considered in deciding either a Rule 15(a) or Rule 15(d) motion.  See United States ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7 (1st Cir. 2015); Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002); Lyon v. ICE, 308 F.R.D. 203, 214 (N.D. Cal. 2015); Fresno Unified Sch. Dist. v. K.U., 980 F.Supp.2d 1160, 1175 (E.D. Cal. 2013).  Thus, under Rule 15(a) and Rule 15(d), district courts should consider undue delay, bad faith, undue prejudice, futility, and prior failures to cure deficiencies.  See Brown v. Stored Value Cards, Inc., 953 F.3d 567, 574 (9th Cir. 2020); Keith, 858 F.2d at 475; Lyon v. United States I.C.E., 308 F.R.D. 203, 214 (N.D. Cal. 2015).

Here, the Court does not detect any unnecessary delay by Plaintiffs in bringing the motion to amend and, considering the early stages of litigation in this case, there is no apparent prejudice to HAI.  Further, there is no indication that the motion to amend was made in bad faith or is being done for an improper purpose.  Finally, because the Court is permitting Plaintiffs to amend the FAC, and because it appears that Plaintiffs will be able to specifically allege and identify new barriers encountered and discovered, the Court cannot say at this time that amendment would be futile.  Particularly in the absence of an express opposition by HAI, the Court finds that it is appropriate to grant Plaintiffs' Rule 15(d) motion to amend.

That being said, Plaintiffs will not be permitted to file the proposed supplemental complaint.  Plaintiffs shall file a "second amended complaint."  The second amended complaint

will address all issues and concerns identified in this order.  Additionally, Plaintiffs will be

required to specifically and expressly identify every separate and distinct barrier that they believe

is at issue in this case (including barriers encountered at the resort's restaurant), and factual

explain why the barrier is a barrier to John.  It is apparent that Plaintiffs are aware of what they

believe are specific barriers.  It takes little effort to clearly identify and support those specific

barriers.[17]

## <u>ORDER</u>

Accordingly, IT IS HEREBY ORDERED that:

1.     Defendants' Rule 12(b)(1) and Rule 12(b)(6) motions (Doc. No. 12) are GRANTED as

        discussed above, and the First Amended Complaint is DISMISSED with leave to amend;

2.     Plaintiffs' motion to amend (Doc No. 16) is GRANTED, as discussed above;

3.     No later than twenty-eight (28) days from service of this order, Plaintiffs may file a second

        amended complaint;

4.     If Plaintiffs fail to file a timely amended complaint, then leave to amend will be

        automatically withdrawn and this case will be closed without further notice.

IT IS SO ORDERED.

Dated:   September 27, 2022                    _____

                                                          SENIOR  DISTRICT  JUDGE

---

[17] To clarify, it is unacceptable to list a large factual background section, incorporate all the factual background section under the ADA claim, and then simply allege that HAI violated the ADA.  Such a practice leaves too much guesswork as to what actions or barriers are truly at issue.  While an incorporated background section may explain why a barrier is a barrier to John, Plaintiffs shall specifically and expressly list each barrier that they believe is at issue under the ADA cause of action.  Of course, this will not prevent Plaintiffs from amending their Complaint to list any newly discovered barriers that relate to John's disability.